[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (#112) AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#114) 
This memorandum of decision addresses two motions pending before the court: the plaintiff's Motion for Partial Summary Judgment, dated January 20, 2000 (#112) and the defendant's Motion for Summary Judgment, dated February 28, 2000 (#114). The litigation between the present parties arises from assertions of the plaintiff, John Conway, that he is covered by a policy of insurance issued by the defendant Travelers Casualty Surety Company of America (Travelers), and that Travelers must defend and indemnify him in connection with a separate pending lawsuit. The defendant has denied liability and responsibility for the underlying claim, stating that policy exclusions exempt it from any obligation to the plaintiff under the circumstances of this case.
Through his pending plaintiff's motion, the plaintiff specifically "seeks summary judgment on the issue of Defendant's duty to provide Plaintiff a defense to the indicated lawsuit." Plaintiff's Motion (# 112). The plaintiff's motion for summary judgment also seeks affirmation of Travelers' duty to indemnify and pay "any damages awarded in the underlying lawsuit." Plaintiff's Motion (#112). Denying these claims, Travelers' motion asks the court to recognize that it "is entitled to judgment as a matter of law" as it is not obligated to defend the plaintiff in this action. Defendant's Motion (#114). The defendant also seeks judgment on the issue of indemnification.[1] The court here denies the plaintiff's motion for partial summary judgment, finding that unresolved and material issues of fact are raised in Counts One, Two, Three and Five, and as well denies the defendant's motion for summary CT Page 15603 judgment as to Counts One, Two, Three and Five, but grants the defendant's motion for summary judgment as to Count Four.
The plaintiff brought the current action through his five count complaint dated March 16, 1999, alleging Travelers' breach of contract, breach of covenant of good faith and fair dealing, tortious bad faith, violation of the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815, et seq., and violation of Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a, et seq. Specifically, the plaintiff alleged that on November 21, 1994, he had purchased an insurance policy from the defendant insurer, carrying liability limits in the amount of $1,000,000 and that he had renewed this policy annually, maintaining coverage through and including November 20, 1999.[2] Complaint (3/16/99), Count One ¶ 2, 3. The plaintiff alleges that the terms of this policy obligates the defendant to defend him from claims brought against him by Kristen Norton, through her complaint dated February 26, 1998.[3] Complaint (3/16/99), Count One ¶ 7,8. The plaintiff categorizes these claims as sounding in false imprisonment and negligent infliction of emotional distress and asserts that they thus constitute claims for "personal injury" by way of "occurrences" which the defendant is bound to defend and indemnify according to the terms of the policy of insurance. Complaint (3/16/99), Count One ¶ 4, 5, 8, 9. Conway's complaint further categorizes Norton's claims as sounding in personal injury" as contrasted with intentional "bodily injury" or "property damage", and submits that, as such, Norton's claims should be defended and indenmified by Travelers. Complaint (3/16/99), Count One ¶ 12, 13.
Count One thus focuses upon the facts ostensibly supporting the plaintiff's breach of contract claims. Count Two, based upon allegations of breach of the covenant of good faith and fair dealing, asserts facts related to Travelers's "refusal to provide a defense and to indemnify Plaintiff for the damages claimed in Norton's suit is in breach of the obligations of Defendant insurer, including the implied covenant of good faith and fair dealing. . . ." Complaint (3/16/99), Count Two ¶ 15. Count Three, addressing the defendant's alleged tortious bad faith in dealing with its insured, specifies that that Travelers's "refusal to provide a defense and to indemnify Plaintiff for the damages claimed in Norton's suit, constitutes a tortious bad faith refusal to defend and indemnify Plaintiff. . . ." Complaint (3/16/99), Count Three ¶ 15. Count Four alleges that Travelers's conduct violates CUIPA. Complaint (3/16/99), Count Four ¶ 15. The concluding count, Court Five, alleges that Travelers's violated CUTPA. Complaint (3/16/99), Count Five ¶ 15.
On April 27, 2000, following the submission of the pending motions, the CT Page 15604 plaintiff requested leave to amend (#115) Counts Two, Three, Four and Five of his original complaint. In a timely fashion, the defendant objected to this request for leave to amend the complaint (#118), citing the pending cross motions for summary judgment, and claiming that these amendments were intended to cure defects which were the subject of Travelers's dispositive motion. Prior to the argument of the summary judgment motions, the plaintiff filed an amended complaint dated May 9, 2000 (#119), repeating the allegations presented through the complaint proposed in request #115. Travelers thoroughly addressed each of the plaintiff's specific allegations through Defendant's Reply Memorandum in Support of Defendant's Motion for Summary Judgment, dated May 12, 2000 (# 121). Accordingly, on May 15, 2000, this court granted the plaintiff permission to amend his complaint, and it is the complaint dated May 9, 2000 (#115) which has been the focus of the court's attention in addressing the pending motions.[4]
Both parties submitted through and detailed briefs and numerous exhibits in support of their positions in these matters.
 I STANDARD OF REVIEW OF INSURANCE CONTRACT IN SUMMARY JUDGMENT MATTERS
The standards governing a trial court's review of issues presented through a motion for summary judgment are well known. "`Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . .In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under the applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46]. . . .' (Citations omitted; internal quotation marks omitted.) Witt v. St. Vincent's Medical Center,252 Conn. 363, 368, 746 A.2d 753 (2000)." (Brackets in the original.)Community Action for Greater Middlesex County, Inc. v. American AllianceIns. Co., 254 Conn. 387, 397-98, ___ A.2d ___ (2000).
Issues related to the content of insurance policies are appropriate for summary judgment review. Specifically relevant to the issues raised by the parties in this matter, our Supreme Court has most recently reiterated the rule establishing that when a policy of insurance CT Page 15605 explicitly excludes from its coverage the conduct alleged in a complaint brought against the insured, the court may properly determine, at summary judgment, whether the insurer has a duty to defend the insured against the allegations of that complaint. Id., 397.
A motion for summary judgment thus properly may be based upon a claim that a defendant insurance company has a contractual obligation to defend a plaintiff insured in an action pending against him. "The question of whether an insurer has a duty to defend its insured is purely a question of law." Id., 395. This rule is equally applicable where, as here, the court has been called upon to determine whether an insurer has a duty to defend its insured against a claim based upon allegations of sexual activity involving the insured and another individual. Id.
In construing the terms of Conway's policy in this case, this court has observed and applied the well established principles governing such matters. Generally, insurance "policy exclusions are strictly construedin favor of the insured." (Emphasis added.) Moore v. Continental CasualtyCo., 252 Conn. 405, 409, 746 A.2d 1252 (2000). However, the "[i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . .The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . .It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . .The policy words must be accorded their natural and ordinary meaning. . . [and] any ambiguity in the terms of an insurance policy mustbe construed in favor of the insured because the insurance companydrafted the policy . . . A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . .The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous." (Brackets in original; citations omitted; emphasis added; internal quotation marks omitted.) Id., 399, quoting Springdale Donuts, Inc. v. Aetna Casualty and SuretyCo. of Illinois, 247 Conn. 801, 805-806, 724 A.2d 1117 (1999).
 II COUNT ONE — BREACH OF CONTRACT CLAIM
Each party has moved the court to enter summary judgment on Count One, which raises the breach of contract claims. The plaintiff argues that he is owed summary judgment because there is no material fact regarding CT Page 15606 whether the defendant breached the defense obligations presented through the insurance policy in question. The defendant requests summary judgment contending that the plaintiff's conduct, as alleged in the Norton Complaint, falls within the policy's coverage exclusion for "business pursuits." Because both parties seek summary judgment on the same issue, the court shall consider both motions jointly. Although the court finds in favor of the plaintiff on the subject of the intentionality of Conway's acts, material issues of fact remain as to the exact nature and extent of the relationship between Conway and Norton. As discussed in Parts II. C. and II. D., below, the factual issues related to Conway's "business pursuits" and "sales activities" cannot be resolved by summary judgment and therefore neither party can prevail on the motion for summary judgment as to Count One.
The question of whether the insurer has a duty to defend the insured "is to be determined by comparing the allegations of [the underlying plaintiff's] complaint with the terms of the insurance policy." CommunityAction for Greater Middlesex County, Inc. v. American Alliance Ins. Co., supra, 254 Conn. 395, citing Moore v. Continental Casualty Co., supra,252 Conn. 409. Fundamentally, in a case such as this, the court must consider and determine whether the allegations of the underlying plaintiff's complaint state "a cause of action which appears on its face to be within the terms of the policy coverage." (Internal quotation marks and citations omitted.) Imperial Casualty Indemnity Co. v. State,246 Conn. 313, 324, 714 A.2d 1230 (1998). See also Community Action forGreater Middlesex County, Inc. v. American Alliance Ins. Co., supra,254 Conn. 395, 397-98. "The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. . . .If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Internal quotation marks omitted; citations omitted; emphasis added.) Moore v. ContinentalCasualty Co., supra, 252 Conn. 409. See also Community Action for GreaterMiddlesex County, Inc. v. American Alliance Ins. Co., supra,254 Conn. 397-98; Imperial Casualty Indemnity Co. v. State, supra,246 Conn. 324. "On the other hand, if the [underlying] complaint alleges a liability which the policy does not cover, the insurer is not required to defend." (Internal quotation marks and external citations omitted.)Community Action for Greater Middlesex County, Inc. v. American AllianceIns. Co., supra, 254 Conn. 399.
According to the protocol reaffirmed in Community Action for GreaterMiddlesex County, Inc. v. American Alliance Ins. Co., then, this court's analysis of the issues raised by the parties should begin with an accounting of the allegations of Norton's complaint, and then should CT Page 15607 proceed to an examination and comparison of Norton's allegations with the terms of the plaintiff's insurance policy.
 A. ALLEGATIONS PRESENTED BY THE NORTON COMPLAINT
Norton's complaint contains eleven counts brought against Conway and his employer, Commercial Credit Corporation (Commercial). The First Count, brought against Commercial, is styled as sounding in sexual harassment. Pertinent paragraphs allege[5] that at relevant times, Conway was employed by Commercial as a "the District Manager" of a tri-state office, who "possessed managerial and supervisory decision making authority" for the corporation. First Count (Norton) ¶ 2. Paragraph 3 of the First Count further alleges that Norton was employed as a secretary at Commercial, and worked for and reported to Conway; ¶ 5 alleges that Conway and Norton commenced asexual relationship "[s]ubsequent to concluding the business duties on or about October 30, 1996. . . ."; ¶ 8 alleges that Conway "made comments having sexual connotations" to Norton, and that he engaged in sexual intercourse with her "[o]n each overnight business trip" they took together; ¶¶ 9 and 11 present allegations that commencing in November 1996, Conway advised Norton that her job responsibilities would include sexual activities at his request; ¶ 12 alleges that Conway made sexual comments to Norton and engaged in sexual activities during the course of a business trip on December 9 and 10, 1996; ¶ 13 alleges that Conway and Norton engaged in sexual activities during lunch hours in December 1996 and January 1997; ¶ 15 of the First Count alleges that Conway and Norton engaged in sexual activities during the course of work hours on December 31, 1996; and ¶ 22 of the First Count alleges that Conway made sexual demands upon Norton and had physical contact with her on March 11, 1997.
The Second Count of Norton's complaint is styled as sounding in sexual harassment against Conway. Paragraphs 1 through 28 of the First Count are incorporated into the Second Count, so that the paragraphs noted above are realleged in the Second Count against Conway. The Third Count of Norton's complaint is styled as sounding in assault and battery against Conway; again, ¶¶ 1 through 28 of the First Count are incorporated into the Third Count, realleging the facts allegedly implicating Conway, as stated above. In addition, ¶ 30 of the Third Count alleges that Conway's conduct toward Norton constituted "wrongful and malicious acts", here implicating intentional behavior on Conway's part.
The Fifth Count of Norton's complaint also is directed at Conway, and apparently is based upon the legal theories of false imprisonment and/or unlawful restraint. After re-alleging ¶¶ 1 through 28 of the First Count, ¶ 29 of the Fifth Count specifically alleges that Conway intended his sexual entreaties to cause Norton's physical liberty to be CT Page 15608 confined and restrained. The Tenth Count of Norton's complaint, again directed at Conway, sounds in negligent infliction of intentional distress. After re-alleging ¶¶ 1 through 30 of the First Count, ¶¶ 31 and 32 of this count specifically allege that Conway "knew or should have realized" that his actions and conduct toward Norton was "unreasonable and involved an unreasonable risk of causing emotional distress" and "illness or bodily harm" to her. The Eleventh Count, directed at Conway, sounds in intentional infliction of emotional distress. After again realleging ¶¶ 1 through 30 of the First Count, ¶¶ 31 through 34 attempt to set forth the necessary elements of this cause of action, including allegations that Conway, through his conduct as described, "intended to inflict emotional distress" upon Norton.
Close consideration of the allegations against Conway, brought through Norton's complaint, reveals the following: the operative allegations of this complaint contain a mixed focus upon negligent acts and intentional conduct by Conway, and upon events which may, or may not, have been business related. Some of those acts and sexual conduct are alleged to have occurred during the course of business, while on overnight and other business trips, and during the course of work hours. However, only one allegation, among many asserting her relationship with Conway, draws a direct relation between Norton's employment responsibilities and the sexual acts at issue.[6] A fair interpretation of the other acts and conduct indicates that, as alleged, they took place outside of a business context.[7] Norton's complaint clearly alleges that Conway held the position of a manager while engaged in his work at Commercial and that he served in a position superior to Norton, acting as her supervisor, on all occasions pertinent to these acts and conduct. However, this complaint contains no definition or explication of the scope of Conway's work as a manager. See Parts II. C. and II. D., below.
 B. POLICY PROVISIONS COVERING INTENTIONAL ACTS
With these allegations in mind, the court next turns to the provisions of the policy issued by Travelers and purchased by Conway.[8] As a primary argument, both the plaintiff and the defendant have noted the element of Conway's putative intentional conduct, raised through Norton's complaint. The defendant claims that the policy provisions do not provide coverage for such intentional behavior as is the subject of Norton's allegations. The plaintiff argues that the language of his Travelers policy specifically establishes coverage for the intentional acts under consideration. Although not dispositive of the pending motions, the court finds this issue in favor of the plaintiff.
In pertinent part, the policy reads as follows: "We will defend an "insured' if sued as a result of an `occurrence' covered by this policy CT Page 15609 even if the suit is groundless, false, or fraudulent." Policy ¶ III. A. 1. The policy defines an "occurrence" as "an accident, including exposure to conditions which results in `bodily injury' or property damage'. . . .It also means offenses which result in `personal injury'." (Emphasis added.) Policy ¶ I. G. At first impression, the language used in these provisions might seem to indicate that the policy does not cover the plaintiff, as no accidental "occurrence" is alleged in the Norton complaint: rather, Norton has alleged intentional acts such as participation in sexual relations, sexual harassment and false imprisonment. See, e.g., Fernandez v. Standard Fire Ins. Co.,44 Conn. App. 220, 225, 688 A.2d 349 (1997) (finding that intentional act of sexual molestation was not covered by homeowner's insurance policy).
However, the court's attention is next drawn to the meaning of the term "personal injury" as used in the Travelers policy's definition of "occurrence." The policy may fairly be read as providing for the defense of an insured who is sued as the result of "offenses which result in `personal injury'", through the language noted above. The policy further defines "personal injury" as including false arrest, false detention, malicious prosecution, libel, slander, and false imprisonment. Policy ¶ I. H. This conduct, of course, represents acts undertaken by the insured for the purpose of achieving a result or, in other words, intentional acts.
By placing the words "accident" and "personal injury" within the definition of occurrence," then defining a "personal injury" as the result of intentional acts, the policy seems, at first glance, to contradict itself. However, our Supreme Court has previously addressed and resolved such an apparent contradiction in Imperial Casualty andIndemnity Co. v. State, supra, 246 Conn. 313. In Imperial Casualty, the court interpreted an insurance policy, relying upon the aforementioned axiom that "ambiguous provisions in a contract are to be interpreted against the drafter." Id., 329. Under this standard, the internal inconsistency in the Imperial Casualty policy's language was interpreted to include coverage for intentional acts that result in personal injuries Id., 329.
Applying the Imperial Casualty analysis to the language of the insurance policy presented in this case, the court finds that because Travelers' definition of "occurrence" is ambiguous, this court must resolve all doubts against the insurer, the defendant in this case. Accordingly, this court concludes that insofar as Conway's policy is concerned, the term "occurrences" is here construed to include intentional acts, including those contained in the definition of "personal Injury" as described above. Next, however, in order to determine if there is a duty to defend, the court must examine whether the Norton CT Page 15610 complaint alleges facts that even possibly fall within coverage of the policy. Community Action for Greater Middlesex County, Inc. v. AmericanAlliance Ins. Co., supra, 254 Conn. 398-99.
The court need only find that the policy covers one of the allegations set forth in the Norton complaint, in order to establish Travelers' obligation to defend Conway. Moore v. Continental Casualty Co., supra,252 Conn. 409. In its definition for "personal injury," the policy lists "false imprisonment" as an act that may cause injury covered by the policy, and, as a result, would trigger the need for defense under the policy if such injury is the subject of a suit against the insured. Norton sets forth a claim of false imprisonment through the allegations of the Fifth Count of her complaint. Accordingly, because the underlying complaint alleges false imprisonment the court finds that the allegations of the complaint establish the defendant's duty to defend Conway against the suit brought by Norton in the underlying action.
 C. POLICY EXCLUSION FOR BUSINESS PURSUITS
Though the Travelers policy provides coverage for Conway's intentional acts, the court must still address the portion of the policy that the defendant claims contains an exclusion from coverage for any conduct, such as Conway's, which occurs in the course of a business. Claiming that Norton's allegations concern occurrences that arose during the plaintiff's business pursuits, Travelers argues that the plaintiff is not covered and it has no duty to defend him.[9] In response, the plaintiff contends that while his sexual encounters with Norton may have been concurrent with business obligations, the term "business pursuits" does not apply to conduct arising out of the course of employment. The court finds that this issue raises questions of material fact that cannot be resolved through reference to the parties' exhibits or to the terms of the insurance policy at issue.[10] Accordingly, neither party can prevail on the related summary judgment claims.
This segment of the court's analysis of the policy language commences with attention both to the exclusion relied upon by the defendant, and with reference to a pertinent exception to the exclusion. The policy reads, in pertinent part, as follows: "This insurance does not apply. . . [t]o `bodily injury', `property damage', or `personal injury' arisingout of `business' property or `business' pursuits of an `insured'." (Emphasis added.) Policy ¶ V. 4. In the definitions section, the policy defines "business" as including "any full or part-time trade, profession, or occupation." Policy ¶ I. C.
In opposing the defendant's reliance upon that language to exclude its obligation to defend against Norton's claims, the plaintiff argues that CT Page 15611 the term "business pursuits" does not apply to the facts of this case, because prior courts have found that the term does not mean "arising out of the course of employment."[11] This issue has been resolved, however, by the superseding and applicable authority of the Connecticut Supreme Court. In 1997, the Supreme Court decided Pacific Indemnity Ins.Co. v. Aetna Casualty Surety Co., 240 Conn. 26, 688 A.2d 319 (1997), interpreting an insurance policy with an exclusion much like the one at issue in this case. The Pacific Indemnity policy also defined "business" as "trade, profession or occupation" and contained a specific exclusion for injury caused by a business pursuit. Id., 27, 31. Upon consideration of the legal implications of these words, the Court held that, as used in the context of an insurance policy, "the term business pursuitencompassed two elements, continuity and profit motive. As to the first element, there must be a `customary engagement or a `stated occupation'; as to the latter, there must be shown to be such activity as a `means of livelihood'; `gainful employment'; `means of earning a living'; `procuring subsistence or profit'; `commercial transactions or engagements.'" (Internal quotation marks omitted; semicolons in the original; emphasis added.) Pacific Indemnity Ins. Co. v. Aetna Casualty Surety Co., supra, 240 Conn. 30 (accepting and quoting from Home Ins.Co. v. Aurigemma, 45 Misc.2d 875, 257 N.Y.S.2d 980 (1965)). In PacificIndemnity, the court applied this analysis to the issue of insurance coverage raised in the context of bodily injuries that had been sustained by the plaintiff's employee, who had been kicked by a horse owned by the defendant's insured, while the horse was being boarded at the plaintiff's facility. The court found that a business pursuits exclusion, contained in the Aetna policy, precluded the defendant carrier's obligation to cover or defend the plaintiff. Although Pacific Indemnity's insureds did not board horses as their sole means of livelihood, in determining whether this horse boarding activity constituted a business pursuit, the court noted that they nevertheless boarded horses continuously, for thepurposes of earning a profit. Id., 26. The activity therefore constituted a business pursuit within the two pronged "continuity and profit motive" test adopted by the court. Id., 30.
Clearly, the term "business pursuits," as applied to Conway, encompassed his job performance and other activities which were undertaken for the economic benefit of Commercial Credit Corporation. No matter what his status, whether a manager or a salesman, the parties do not contest that Conway was employed by Commercial, on a continuous basis, for the purpose earning a profit. His employment relationship with Commercial thus satisfies the business pursuit test established byPacific Indemnity Ins. Co. v. Aetna Casualty Surety Co.
The significant material factual question that remains, however, is whether the conduct alleged in Norton's complaint resulted in any profit CT Page 15612 to either Conway or Commercial. Even broadly construed, Norton's allegations do not permit, for example, an absolute determination as to whether Conway's work productivity at Commercial increased as the result of his sexual relationship with his secretary; whether monetary gain was at issue between Conway and Norton; or whether a "profit motive" played any part in their meetings, within the meaning of Pacific Indemnity Ins.Co. v. Aetna Casualty Surety, supra, 240 Conn. 30. The identification of this question of material fact, concerning the implications of the Travelers policy, is consistent with our appellate level courts' consistent acknowledgment that "policy exclusions are strictly construedin favor of the insured." (Emphasis added.) Moore v. Continental CasualtyCo., supra, 252 Conn. 409.
Even if the element of a "profit motive" is requisite to the application of the "business pursuits" exclusion in the Travelers policy, the defendant further argues that it need not defend or provide coverage for Conway because the incidents alleged in Norton's complaint "arose from" Conway's business pursuits with Commercial. The court finds this argument to be unavailing, due to the existing issues of fact as to whether a "profit motive" was involved in the relationship.
The court nonetheless notes that the term that "arising out of", as presented in Policy ¶ V. 4., generally means "`was connected with,' `had its origins in,' `grew out of,' `flowed from,' or `was incident to.'" Hogle v. Hogle, 167 Conn. 572, 577, 356 A.2d 172 (1975) (homeowner's insurance policy excluding coverage for injuries sustained in motor vehicle accident). The sexual relationship between Norton and Conway is in many instances temporally related to Conway's business activities. The conduct described in Norton's complaint was often concurrent to, or may have occurred during, events such as business trips, which were allocated for the performance of Conway's and Commercial's business endeavors. However, the fact that Conway's sexual relations with Norton may have been temporally related to his business pursuits does not establish, without question, that their assignations "arose out of" the plaintiff's business relationship with Commercial.[12]
See Pacific Indemnity Ins. Co. v. Aetna Casualty Surety Co., supra,240 Conn. 30. Conway may have encountered and may have been enabled to establish a relationship with secretary his because their mutual employment by Commercial. With the exception of the incidents set forth in the First Count ¶¶ 9 and 11 of Norton's complaint, neither the pleadings nor the summary judgment exhibits reasonably permit the court to determine that the sexual relationship at issue "had its origins in", "grew out of", and "flowed from" Conway's performance of his business duties, within the meaning of Hogle v. Hogle, supra. 167 Conn. 572. While Conway may have furthered his sexual relationship during the time allocated for business activities, this court cannot determine, without CT Page 15613 question, that the allegations of Norton's complaint support Travelers' claim that this conduct was a part of the plaintiff's work with Commercial, or that Commercial played anything other than a temporal part in originating or inciting the liaison.[13]
Thus, in the context of these proceedings, the pleadings and exhibits do not permit the court to ascertain Commercial's interest in the relationship between Conway and Norton, or other facts related to the foundation of the sexual conduct at issue. As such, the term "arising out of', presented in the context of the "business pursuits" exclusion, is unclear and ambiguous as to the plaintiff in this matter. The court remains mindful that in construing the language of an insurance policy, "any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy."Moore v. Continental Casualty Co., supra, 22 Conn. 409. Applied to this, that rule renders inappropriate the summary determination of whether Conway's sexual relationship with Norton constitutes an event "arising out of' the plaintiff's "business pursuits."
As neither party has shown the absence of any genuine issue of material facts exist concerning the nature and extent of the business pursuits at issue in this case, and further exist concerning the etiology of the contact between Conway and his secretary, the court cannot properly resolve the applicability, or inapplicability, of the business pursuits exclusion at this summary judgment stage of the proceedings. CommunityAction for Greater Middlessex County, Inc. v. American Alliance Ins.Co., supra, 254 Conn. 397-398.
 D. POLICY EXCEPTION To EXCLUSION FOR COLLECTION OR SALES ACTIVITIES
The plaintiff further argues that even if the business pursuits exclusion applies to him, he is protected by the Travelers' policy because it contains an exception for those who are engaged in sales activities. The defendant contends that the sales exception cannot apply to Conway, because the complaint fails to indicate that he served in that capacity in the course of his work for Commercial. The defendant asserts that in considering this matter, the court must look to the allegations of the underlying complaint in order to determine whether the exception will apply in this case, and that, alternatively, even if the court is not bound by the allegations of Norton's complaint Conway's assertions establish only that he was a manager, not a salesman. Again, as the court finds that this issue raises questions of material fact that cannot be resolved without the presentation of evidence, neither party can prevail on the related summary judgment claims. CT Page 15614
The pertinent policy provision follows Travelers' language establishing the business pursuits exclusion, limiting and restricting the application of this exclusion as follows: "However, this exclusion does not apply to . . . [a]ctivities connected with the `insured's' occupation if a Collector . . . [or] Salesman." (Emphasis added.) Policy ¶ V. 5. g. In support of his motion for partial summary judgment, and in opposition to the defendant's motion, Conway claims that his occupation was as a collector and a salesman.
In pursuit of this exception to the business pursuits exclusion, the plaintiff vigorously argues that despite his overall managerial responsibilities at Commercial, he may technically be cast as a salesman or a collector, and that he has been assigned duties corresponding with these positions. To support his position, he has submitted his personal affidavit and a job description ostensibly promulgated by Commercial. See Plaintiff's Motion for Partial Summary Judgment (#112), Exhibit B and Exhibit C.
The defendant makes two arguments to counter these exhibits. First, it asserts that, notwithstanding the plaintiff's affidavit and documentation, the court must find as a matter of law that the plaintiff cannot utilize the salesman or collector exception because the underlying Norton complaint contradicts the plaintiff's assertions.[14] Secondly, the defendant argues that the affidavit and documentation are inadequate to sustain the defendant's burden for summary judgment.
Focusing first upon the Norton complaint, the court finds that she indeed has alleged that Conway was her supervisor and manager. The defendant claims that because Norton fails to specifically allege that Conway performed sales or collection duties, in the course of his managerial position, the court is bound by the underlying complaint and must, therefore, find that the exclusion does not apply to Conway. In support of its contention, the defendant cites the oft-quoted "exclusive pleading rule" for the proposition that the court may deny coverage to the plaintiff based upon the underlying complaint.
The exclusive pleading rule states that "the duty to defend does not depend on facts disclosed by the insurer's independent investigation where the third party's complaint appears to be within the coverage. Leev. Aetna Casualty Surety Co., 178 F.2d 750 (2d Cir.). As Judge Learned Hand has stated, the duty to defend means "that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury `covered' by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact "covered." (Quotation CT Page 15615 marks omitted.) Missionaries of Mary, Inc. v. Aetna Casualty SuretyCo., 155 Conn. 104, 112, 230 A.2d 21 (1967). Because, the defendant reasons, it is the claim which determines the insurer's obligation toward its insured, a court deciding whether the insurance company has a duty to defend is bound by the underlying complaint, even when doing so would defeat the insured's claim of a duty to defend. This court finds that such an application of the exclusive pleading rule would do violence to the purposes of the rule and would violate the principles that courts use when construing insurance contracts and the exclusions contained therein.
First, it should be noted that the exclusive pleading rule has never been used in Connecticut to defeat an insurer's duty to defend. This court has undertaken an exhaustive review of relevant Connecticut law and the law of other jurisdictions, and has found no case that applies the exclusive pleading rule in the manner that the defendant suggests.[15]
Notably, the defendant has not provided this court with a case that supports its application of the rule.
Moreover, the very purpose of the exclusive pleading rule suggests that it should not be used in this state to defeat an insurer's duty to defend, where it has been held that where at all possible, coverage is extended to protect an insured. See Moore v. Continental Casualty Co., supra, 252 Conn. 409 ("If an allegation of the complaint falls evenpossibly within the coverage, then the insurance company must defend the insured."). When explaining the exclusive pleading rule, the Connecticut Supreme Court in Missionaries used the rule to discourage insurers from challenging the duty to defend by independently investigating the underlying claims brought against insureds. See Missionaries of Mary,Inc. v. Aetna Casualty Surety Co., supra, 155 Conn. 111-112. The Connecticut Supreme Court, thus, intended the exclusive pleading rule toexpand, not contract, the insurer's duty to defend.
Finally, this court's decision on this matter is guided by two well-settled principles regarding the interpretation of an insurer's duty to defend. First, all ambiguities in the insurance policy must be resolved in favor of the insured because it is the insurer who drafts the policy. Edelman v. Pacific Employers Ins. Co., 53 Conn. App. 54, 60,728 A.2d 531 (1999). Secondly, "policy exclusions are strictly construed in favor of the insured." Moore v. Continental Casualty Co., supra,252 Conn. 409. Given these principles of construction, this court cannot use the exclusive pleading rule to deny as a matter of law the duty to defend.
The defendant's second argument states that the plaintiff's affidavit and documentation show, as a matter of law, that the plaintiff is a CT Page 15616 manager and not a salesman or collector. This court finds that the affidavit and documentation are not inadequate and show that a genuine issue of fact exists as to whether the plaintiff was a salesman or collector and, therefore, whether the policy exclusion applies to him.
Conversely, the plaintiff asserts that the affidavit and documentation prove that, as a matter of law, he was a salesman or collector and that the exclusion to the policy exemption should apply to him. This court finds, however, that the affidavit and documentation merely serve to demonstrate the existence of a genuine issue of material fact, without establishing, as a matter of law, that the plaintiff is a salesman or collector. "[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." (Internal quotation marks omitted.) Miller v. United Technologies Corp., 233 Conn. 732, 752,660 A.2d 810 (1995). Summary judgment thus "is appropriate only if a fair and reasonable person could conclude only one way." Id., 752.
While the affidavit and document help Conway's claim survive summary judgment, they do not establish his claim in such a way that a reasonable person could not find otherwise. His affidavit is self-serving, albeit suggesting that he has a role in sales activities and collection, as he required by Commercial to as "{m]anage, direct and participate in all collection activities, . . . [and to] . . . perform `hands on' sellingand collection functions in areas short staffed or where production needed improvement." (Emphasis added.) Plaintiff's Motion (#112), Exhibit B. This affidavit is not dispositive of the factual issues related to the scope of Conway's managerial work for Commercial, as "[t]he question of the credibility of witnesses is for the trier to determine . . . Where testimony is conflicting the trier may choose to believe one version over the other . . . as the probative force of the evidence is for the trier to determine." (Internal quotation marks omitted.) State v. Santiago, 245 Conn. 301, 318, 715 A.2d 1 (1998); see also State v. Vargas, 34 Conn. App. 492, 498, 642 A.2d 47, cert. denied,230 Conn. 907, 644 A.2d 921 (1994). The trier of fact may accept or reject, in whole or in part, the testimony of any witness. See Smith v.Smith, 183 Conn. 121, 123, 438 A.2d 842 (1981); see also State v.Vargas, supra, 34 Conn. App. 498; Connecticut Civil Jury Instructions, Credibility of Witnesses § 1.39.
Under the circumstances of this case, the court finds that neither party has eliminated the existence of questions related to material facts exist concerning the nature Conway's managerial and/or sales and/or collection-related role with Commercial. As such, the court cannot properly resolve the applicability, or inapplicability, of the sales and collection exception to the business pursuits exclusion of the Travelers CT Page 15617 policy, rendering summary judgment inappropriate at this time. CommunityAction for Greater Middlessex County, Inc. v. American Alliance Ins.Co., supra, 254 Conn. 397-398.
 III BREACH OF THE GOOD FAITH COVENANT AND TORTIOUS BAD FAITH
Travelers also asks that the court find summary judgment as to the second and third counts of the plaintiff's complaint.[16] Count Two alleges that the defendant breached a covenant of good faith and fair dealing in the course of determining whether it would defend and provide coverage for the plaintiff. Count Three alleges tortious bad faith, based upon similar alleged circumstances. Because these counts effectively raise the same claim, albeit approached from different legal perspectives, the court will address together the issues as to Count Two and Count Three. As questions of material fact exist as to the underlying circumstances affecting both counts, the defendant cannot prevail on this aspect of its summary judgment motion.
"[The] implied covenant of good faith and fair dealing has been applied . . . in a variety of contractual relationships including . . . insurance contracts. . . .The concept of good faith and fair dealing is [e]ssentially . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." (Citations omitted; internal quotation marks omitted.) Verrastro v. Middlesex Ins. Co., 207 Conn. 179,190, 540 A.2d 693 (1988). Whether a party to a contract has violated the implied covenant of good faith must be determined on a case-by-case basis. Id. Such a standard makes the determination a question of fact.
Bad faith, on the other hand, is the opposite rule, although its determination, as well, must be based upon the facts of each particular case. "To prove a claim for bad faith under Connecticut law, the [plaintiff is] required to prove that the defendants engaged in conduct design[ed] to mislead or to deceive . . . or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties . . . . [B]ad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." (Internal quotation marks omitted.) Chapman v. Norfolk Dedham Mutual Fire Ins. Co., 39 Conn. App. 306, 320, 665 A.2d 112
CT Page 15618 (1995). Again, as noted, the issue of bad faith must be resolved by reference to facts of each individual proceeding.
In this case, Travelers argues that because its policy did not provide either coverage for the plaintiff or an obligation to defend him against Conway's lawsuit, this court must award summary judgment on the issues of both breach of covenant of good faith and tortious bad faith. The defendant's arguments in support of its motions for summary judgments as to Count Two and Count Three, rely entirely upon its assumption that it had no contractual duty to cover or defend Conway, matters which were found In Part II, above, to be indeterminate at this stage of the proceedings, where this court discerned the existence of genuine issues of material fact relating to the insurer's obligations toward its insured. Under these circumstances, the defense has presented nothing more than well-intentioned circular logic.
Accordingly, because the issue of coverage remains unresolved, and the determination of a breach of the covenant of good faith or tortious bad faith are questions of fact, the defendant cannot prevail on these issues. Based on the legal principles set forth above, the court therefore must deny the defendant insurer's motion for summary judgment as to Counts Two and Three.
 IV CUTPA AND CUIPA CLAIMS
Travelers also has moved for summary judgment regarding the plaintiff's fourth and fifth counts. In Count Four, the plaintiff alleges that the defendant insurer has violated CUIPA. Count Five alleges a violation of CUTPA. Both counts allege the same facts as the basis for the violation of each legislative act. This court will, therefore, analyze and address both counts together. Again, material questions of fact are found to exist as to the underlying policy and the circumstances of Conway's coverage relevant to the CUTPA claim, so that it cannot prevail on this aspect of its summary judgment motion. However, for the reasons stated below, the court grants summary judgment as to Count Four, which purports to raise a CUIPA claim.
"In a CUTPA or CUIPA claim, the insurer's liability is ordinarily based on its conduct in settling or failing to settle the insured's claim and on its claims settlement policies in general. The factual inquiry focuses, not on the nature of the loss and the terms of the insurance contract, but on the conduct of the insurer. . . .In a CUIPA and CUTPA claim, the insurer's duty stems not from the private insurance agreement but from a duty imposed by statute." (Citations omitted; internal CT Page 15619 quotation marks omitted.) Heyman Associates No. 1 v. Ins. Co. ofPennsylvania, 231 Conn. 756, 790, 653 A.2d 122 (1995).
 A. CUIPA CLAIM
As to the viability of the plaintiff's CUIPA claims, Travelers rightly notes that the Connecticut Supreme Court has not yet decided whether CUIPA affords a private right of action for individuals. See, e.g.,Napoletano v. Cigna Healthcare of Connecticut, Inc., 238 Conn. 216, 221
n. 5, 680 A.2d 127 (1996); Lees v. Middlesex Ins. Co., 229 Conn. 842, 847
n. 4 (1994); Mead v. Burns, 199 Conn. 651, 657 n. 5, 509 A.2d 11 (1986). It is equally true, however, that the Superior Courts of this state hold divergent opinions on that issue. A great number of trial court decisions have ruled that no a private cause of action in CUIPA exists at this time.[17] A similarly large number of trial court decisions have held to the contrary, extending a private action in CUIPA.[18]
This court finds the reasoning of the first line of cases to be most persuasive, and joins those other Superior Courts which have concluded that an individual may not successfully bring forth a private cause of action based upon CUTPA's provisions. The text and intent of the CUIPA legislation clearly establishes its regulatory nature. The Act specifically authorizes the Commissioner of Insurance to enforce its provisions, while its language lacks any express provisions for a private cause of action. The plaintiff has failed to provide the court with a reasonable basis for inferring a private cause of action from the statutory language at issue. See Gaudio v. Nationwide Mutual Ins. Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 423546 (May 21, 1999, Devlin, J.) Furthermore, although the plaintiff has tacitly argued that the provisions of CUIPA, being silent as to a private cause of action, should be acknowledged as ambiguous, so that the court should here grant him deference and extend the private right of action, this court finds that the extension of this privilege is precluded by the tenor of the Act. "CUIPA authorizes the imposition of criminal penalties for the commission of conduct it proscribes . . . [and] ambiguity in penal statutes requires a construction limiting rather than expanding civil liability." Suski v. Peerless Ins. Co., Superior Court, judicial district of New Britain at New Britain, Docket No. 488528 (February 8, 1999, Robinson, J.). Furthermore, a plaintiff "who feels that he or she has been harmed by a CUIPA violation is not without remedy, but that remedy needs ot be pursued as a CUTPA [claim.]" (Brackets in original; internal quotation marks omitted.) Baroni v. Western Reserve Life Assce.Co., Superior Court, judicial district of Middlesex at Middletown, Docket No. 087965 (September 29, 1999, Gordon, J.).
In its opposition to the defendant's motion for summary judgment, the CT Page 15620 plaintiff also identifies General Statutes §§ 38a-816(1)[19] and38a-816(6)[20] as establishing fundamental bases for the denial of deny summary judgment as to his CUIPA count. These statutes, presenting portions of the definitional sections of the CUIPA statute, addressing the misrepresentation and false advertising of insurance policies in §38a-816 (1) and the designation of unfair claim settlement practices in § 38a-816(6), are unavailing. Under those subsections, the facts alleged in Conway's complaint would potentially serve as support for CUIPA enforcement action brought by the Commissioner of Insurance. However, neither the facts alleged in the complaint, not the statutory provisions promoted by the plaintiff, overcome the legal threshhold as to whether an individual person has a private cause of action under CUIPA. Consistent with multiple rulings in the Superior Courts of this state and the reasoning behind those decisions, this court has resolved that question in the negative.
Accordingly, having found that a plaintiff is not entitled to pursue a private cause of action under CUIPA, the court grants the defendant's motion for summary judgment as to Count Four.
 B. CUTPA CLAIM
The defendant's motion for summary judgment as to Count Five claims that no questions of material fact exist as to whether it engaged in unfair trade practices, in violation of CUTPA.[21] The Connecticut Supreme Court has found that CUTPA applies to insurance companies, allowing a private cause of action for unfair practices. Mead v. Burns, supra, 199 Conn. 662-63. See also Baroni v. Western Reserve Life Assce.Co. As questions of material fact exist as to the underlying circumstances affecting this count, the defendant cannot prevail on this aspect of its summary judgment motion.
In his complaint, the plaintiff alleges that the defendant violated CUTPA in seven ways: "By failing to conduct a prompt and reasonable investigation into the facts surrounding Plaintiff's claim. . . .By failing and refusing to provide coverage despite the clear and unequivocal language of Plaintiff's policies. . . .By invoking exclusions which do not appear in Plaintiff's policies. . . . By invoking exclusions which do not apply to Plaintiff. . . .By compelling Plaintiff to initiate litigation and incur legal expenses. . . .By failing to respond promptly to Plaintiff's communications. . . .By failing to attempt to settle in good faith." Complaint (5/9/00), Count Five ¶ 15.
The legal standard for CUTPA claims has been set forth as follows: "Connecticut courts, when determining whether a practice violates CUTPA, will consider (1) whether the practice, without necessarily having been CT Page 15621 previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). . . .Thus, a violation of CUTPA may be established by showing either an actual deceptive practice. . . or a practice amounting to a violation of public policy." (Citation omitted.) Ancona v. Manafort Bros., Inc.,56 Conn. App. 701, 714, 746 A.2d 184 (2000).
In support of its claims that no material facts exist as to whether the defendant acted in violation of CUTPA according to the standard set forth in Ancona v. Manafort Bros., Inc., supra, the defendant has submitted correspondence between the parties, and between the parties and plaintiff's counsel. See Defendant's Motion (#114), Exhibits 1, 2, 3. In opposition to this aspect of the defendant's motion for summary judgment, the plaintiff has provided the court with the same correspondence. See Plaintiff's Motion (#112), Exhibits E, F, G. In those letters, policy no. 067402327-311-7 is referenced by both counsel for the plaintiff and counsel for the defendants.[22] Through this correspondence, in which the defendant denies coverage, Travelers makes reference to the exclusions set forth in the insurance policy it wrote for Conway.
These letters clearly do not carry the burden of demonstrating, as a matter of law, that the defendant did not violate CUTPA. Rather, these letters support the plaintiff's contention that, at least, there are questions of fact concerning the implications and effect of Travelers' denial of his claim. Hertz Corp. v. Federal Ins. Co., 245 Conn. 374,381, 713 A.2d 820 (1998) (on summary judgment, evidence must be viewed in the light most favorable to the nonmoving party). While the written communications between the parties answer the allegations of timely response and invocation of policy exclusions, they do not answer whether the defendant failed to properly or reasonably investigate the plaintiff's claim or invoked the policy exclusions in bad faith.
In this matter, the court has found that a genuine issue of material fact exists as to whether Travelers breached its contract with its insured, Conway, by denying coverage and a defense to the Norton lawsuit.[23] However, the defendant has not demonstrated that, as a matter of law, its conduct of denying coverage was not a deceptive act, which might constitute a violation of CUTPA. Even if Travelers had improperly denied coverage to the plaintiff, the correspondence exhibits provided by the defendant fail to establish facts which would extinguish the plaintiff's questions as to whether the insurer committed an unfair, unscrupulous, deceptive act by not properly investigating the plaintiff's CT Page 15622 claim before taking action. Accordingly, this court denies summary judgment on behalf of the defendant on the fifth count of the complaint.
The plaintiff argues that he has produced enough documentation to rebut the defendant's contention that no genuine issue of material fact exists regarding whether the defendant violated CUTPA. Utilizing the standard set forth in Hertz Corp. v. Federal Ins. Co., supra, this court agrees, and finds that sufficient issues of material fact exist concerning Travelers' conduct toward its insured to require denial of the defendant's motion for summary judgment as to Count Five of the complaint.
 V CONCLUSION
WHEREFORE, for the reasons stated herein, this court DENIES the plaintiff's Motion for Partial Summary Judgment, dated January 20, 2000 (# 112).
AND FURTHERMORE, for the reasons stated herein, the court DENIES the defendant's Motion for Summary Judgment, dated February 28, 2000 (#114) as to Count One, Count Two, Count Three, and Count Five, because a genuine issue of material fact exists as to the issues of breach of contract, breach of the covenant of good faith, commission of tortious bad faith, and violation of CUTPA as raised in the complaint; but GRANTS summary judgment in favor of the defendant on Count Four, because CUIPA does not provide the plaintiff with a private cause of action.
BY THE COURT,
N. Rubinow, J.