## GARY C. MOORE *v.* CONTINENTAL CASUALTY COMPANY
### (SC 16100)

Borden, Norcott, Katz, Palmer and Peters, Js.

---

Argued December 7, 1999—officially released March 13, 2000*

*Gerald T. Giaimo*, for the appellant (plaintiff).

*Kerry R. Callahan*, with whom, on the brief, were *James N. Tallberg* and *Karen K. Clark*, for the appellee (defendant).

*Kathryn Calibey* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

* March 13, 2000, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Opinion*

BORDEN, J. The sole issue in this certified appeal is whether allegations of emotional distress arising out of economic loss suffice to trigger a duty to defend under a homeowner's insurance policy covering liability for "bodily harm, sickness or disease . . . ." Following our grant of certification, the plaintiff, Gary C. Moore, appeals from the judgment of the Appellate Court affirming the trial court's grant of summary judgment in favor of the defendant, Continental Casualty Company.[1] We conclude that the allegations in question do not trigger the defendant's duty to defend under the policy.[2] Accordingly, we affirm the judgment of the Appellate Court.

The plaintiff is the insured under a homeowner's insurance policy issued by the defendant. The plaintiff's sister, Gail Standish, brought an action against the plaintiff by way of a complaint that alleged conversion, fraud, intentional infliction of emotional distress and negligent infliction of emotional distress. Standish is the joint owner of property with her mother, Coral Moore. Standish alleged that the plaintiff had obtained a power of attorney from Coral Moore and herself and, together with Richard Stapleton, her attorney, had obtained a $150,000 line of credit that was secured by the jointly owned property. Standish alleged that, as a result of the plaintiff's actions, she had suffered financial loss in the amount of $150,000, and also had suffered emotional

[1] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly determine as a matter of law that a claim for emotional harm is not a claim for bodily injury under the terms of a homeowner's insurance policy." *Moore* v. *Continental Casualty Co.*, 248 Conn. 918, 734 A.2d 566 (1999).

[2] This conclusion renders it unnecessary for us to consider the defendant's alternate ground for affirmance, namely, that the loss in question is not covered under the insurance policy because it could have been "reasonably expected or intended" by the insured or a covered person.

distress, stress and anxiety as a result of that financial loss.

Four of the seven counts in the complaint filed by Standish are directed at the plaintiff. Three of those counts allege reckless or intentional acts: count four alleges that the plaintiff used a line of credit in violation of General Statutes § 52-564; count five alleges that the plaintiff, acting as Standish's fiduciary, wantonly and recklessly or intentionally made material omissions and misrepresentations regarding her line of equity; and, count six alleges intentional infliction of emotional distress. It is undisputed that these three counts do not trigger a duty to defend under the plaintiff's homeowner's insurance policy because they are excluded under the policy's "expected or intended" exclusion. Count seven, however, alleges negligent infliction of emotional harm.[3]

The plaintiff brought this declaratory judgment action against the defendant seeking an adjudication that it had a duty to defend[4] him against the complaint brought by Standish.[5] The parties presented the case to the trial

---

[3] In the seventh count of her complaint, Standish alleges: "The [plaintiff and Stapleton] negligently and carelessly caused emotional harm to [Standish] in one or more of the following ways: a) In that they failed to inform [Standish] that they were incurring substantial liabilities on her property as aforesaid; b) In that they negligently and carelessly failed to inform [Standish] that the Will of [her] mother had been changed and would subject her property to a large encumbrance; c) In that they negligently and carelessly failed to warn [Standish] of the effects of the actions they were taking concerning Coral Moore; d) In that even though they knew, or in the exercise of reasonable care should have known, that the combined effect of their actions would serve to create a severe financial hardship on . . . Standish, they failed to take any action which would allow her to protect herself from the effect of their actions."

[4] Although the declaratory judgment action also purported to seek an adjudication of a duty to indemnify, the plaintiff confines his claims on appeal to the defendant's alleged duty to defend.

[5] The trial court found that both Standish and Stapleton had been given reasonable notice of the action pursuant to Practice Book § 17-56 (b).

court by way of cross motions for summary judgment. The court granted the defendant's motion and denied the plaintiff's motion, and rendered judgment for the defendant. The plaintiff appealed from the trial court's judgment to the Appellate Court, which affirmed the judgment. *Moore* v. *Continental Casualty Co.*, 52 Conn. App. 287, 288, 725 A.2d 994 (1999). This appeal followed.

Conceding that there are no disputed questions of fact, the plaintiff claims that the defendant had a duty to defend because the insurance policy defines "bodily injury" broadly enough to include emotional distress. We disagree.

"[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, 240 Conn. 26, 30, 688 A.2d 319 (1997). "The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage." (Internal quotation marks omitted.) *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 646, 679 A.2d 929 (1996). "If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Internal quotation marks omitted.) *Schwartz* v. *Stephenson*, 37 Conn. App. 581, 585, 657 A.2d 244 (1995). Although policy exclusions are strictly construed in favor of the insured; *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 770, 653 A.2d 122 (1995); "the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, supra, 30.

In the present case, both parties contend that the language in question unambiguously supports their respective interpretations. We agree with the defendant's interpretation. Applying the appropriate standard of review to the allegations of the complaint and the language of the policy, we conclude that these allegations do not trigger the defendant's duty to defend. An allegation of emotional distress arising out of economic loss, as alleged in this case, does not trigger a duty to defend under the coverage for " '[b]odily [i]njury,' " which is defined in the insurance policy as "bodily harm, sickness or disease . . . ."

We begin with the language of the insurance policy. The personal liability coverage provision of the plaintiff's policy provides that the defendant would defend and indemnify the plaintiff "[i]f a claim [is made] or [a] suit is brought against you or any covered person for the following: 1. Personal Injury; 2. *Bodily Injury*; 3. Property Damage . . . ." (Emphasis added.) The definitional section of the plaintiff's homeowner's insurance policy provides in relevant part: "4. 'Bodily Injury' means bodily harm, sickness or disease, except any communicable disease, including required care, loss of services and death resulting therefrom. . . . 12. 'Personal Injury' means libel, slander, false arrest, wrongful detention, wrongful entry, malicious prosecution, invasion of privacy or defamation of character. 13. 'Property Damage' means physical injury to or destruction of property including loss of use of the property. . . ."

First, the word bodily as ordinarily used in the English language strongly suggests something physical and corporeal, as opposed to something purely emotional. Webster's Third New International Dictionary confirms this notion, and associates the term bodily with the physical aspects of the human body, and contrasts it with the nonphysical aspects of the human experience such as

the mental and spiritual.[6] In the insurance policy, the word bodily is used as an adjective to modify the terms injury, harm, sickness and disease. Including purely emotional harm arising out of economic loss as a form of bodily injury would be tantamount to defining the term bodily injury with an antonym. At the very least, such a construction would render the term bodily superfluous as an adjective modifying the term injury. It is fair to infer that the use of the term bodily was employed in the policy both accurately and purposefully.

Second, the structure of the insurance policy strongly suggests that noncorporeal torts are not covered by the term " 'Bodily Injury.' " There are three types of personal liability coverage in the policy: the first, for "Personal Injury," involves noncorporeal torts, but does not cover the tort of negligent infliction of emotional distress; the second, for "Bodily Injury," uses the term bodily to describe the type of injury covered; and the third, for "Property Damage," uses the term physical to describe the type of property damage covered. It is reasonable to infer, therefore, that, to the extent that nonbodily or noncorporeal torts are covered, they are specified in the first category, namely, "Personal Injury." It is also reasonable to infer from this structure that the other categories *do* require some aspect of bodily harm, as in the case of "Bodily Injury," or physical damage, as in the case of "Property Damage."

Third, the overwhelming majority of jurisdictions that have considered this question have reached conclusions consistent with our interpretation of the insurance policy in question. The majority rule is that, as a matter of law, the term bodily injury in a liability policy does not include emotional distress unaccompanied by phys-

---

[6] Webster's Third New International Dictionary defines "bodily" as "having a body or a material form: PHYSICAL, CORPOREAL . . . of or relating to the body . . . concerning the body . . . BODILY contrast with *mental* or *spiritual* . . . ." (Emphasis in original.)

ical harm. See *First Investors Corp.* v. *Liberty Mutual Ins. Co.*, 152 F.3d 162, 166–67 (2d Cir. 1998) (no duty to defend against claim for emotional distress arising out of economic losses caused by securities fraud); *Keating* v. *National Union Fire Ins. Co.*, 995 F.2d 154, 156 (9th Cir. 1993) (same); *Bituminous Fire & Marine Ins. Co.* v. *Izzy Rosen's, Inc.*, 493 F.2d 257, 260–61 (6th Cir. 1974) (no duty to defend against claim for emotional distress arising out of slander and false arrest); *Aetna Casualty & Surety Co.* v. *First Security Bank*, 662 F. Sup. 1126, 1128 (D. Mont. 1987) (no duty to defend against claim for emotional distress arising out of termination of employment); *American & Foreign Ins. Co.* v. *Church Schools in the Diocese of Virginia*, 645 F. Sup. 628, 632–33 (E.D. Va. 1986) (no duty to defend against claim for emotional distress arising out of teacher's alleged improper sexual conduct); *St. Paul Fire & Marine Ins. Co.* v. *Campbell County School District No. 1*, 612 F. Sup. 285, 287 (D. Wyo. 1985) (no duty to defend against claim for emotional suffering arising from publication of satirical cartoon in school newspaper); *Rolette County* v. *Western Casualty & Surety Co.*, 452 F. Sup. 125, 130 (D.N.D. 1978) (no duty to defend against claim for emotional distress arising out of unconstitutional seizure of property); *SL Industries, Inc.* v. *American Motorists Ins. Co.*, 128 N.J. 188, 202, 607 A.2d 1266 (1992) (no duty to defend against claim for humiliation, loss of self-esteem, irritability and sleeplessness arising out of action for age discrimination); *Mellow* v. *Medical Malpractice Joint Underwriting Assn.*, 567 A.2d 367, 368 (R.I. 1989) (no duty to defend against claim for emotional distress arising out of embarrassing medical test); *E-Z Loader Boat Trailers, Inc.* v. *Travelers Indemnity Co.*, 106 Wash. 2d 901, 907–908, 726 P.2d 439 (1986) (no duty to defend against claim for emotional distress arising out of illegal discharge from employment); see also *Allstate Ins. Co.* v.

*Diamant,* 401 Mass. 654, 658, 518 N.E.2d 1154 (1988) (no coverage for emotional distress, injury to reputation, and mental pain and anguish arising out of defamatory statements); B. Ostrager & T. Newman, Insurance Coverage Disputes (9th Ed. 1999) § 7.03[a], pp. 297–98.

In sum, we agree with the reasoning of the Court of Appeals in *Keating* v. *National Union Fire Ins. Co.,* supra, 995 F.2d 156, a case involving allegations of securities fraud, in which the allegations of harm included " 'emotional and physical distress, and impairment of health' " arising out of the economic losses. The court concluded that because the economic loss itself was outside the scope of the comprehensive general liability policies in question, coverage for derivative emotional or physical distress was outside the reasonable expectations of the parties to the policy. Id. "It would expand coverage of these policies far beyond any reasonable expectation of the parties to sweep within their potential coverage any alleged emotional or physical distress that might result from economic loss that is itself clearly outside the scope of the policy." Id.; see also *First Investors Corp.* v. *Liberty Mutual Ins. Co.,* supra, 152 F.3d 167; *SL Industries, Inc.* v. *American Motorists Ins. Co.,* supra, 128 N.J. 205 ("[m]ost insureds understand that the coverage of their 'bodily injury' policies is limited to injuries involving some sort of connection with a physical problem").

We are not persuaded by the decisions of the courts, on which the plaintiff relies, that have reached contrary conclusions. See, e.g., *Vigna* v. *Allstate Ins. Co.,* 686 A.2d 598, 600 (Me. 1996) (duty to defend against claim of emotional distress arising out of contract dispute); *Voorhees* v. *Preferred Mutual Ins. Co.,* 128 N.J. 165, 179, 607 A.2d 1255 (1992) (emotional distress deemed within term bodily injury because accompanied by physical symptoms of nausea, stomach pain and headaches); *Lavanant* v. *General Accident Ins. Co.,* 79

N.Y.2d 623, 630, 595 N.E.2d 819, 584 N.Y.S.2d 744 (1992) (emotional distress resulting from property damage within coverage for bodily injury). In our view, these authorities find ambiguity where there is none, and are contrary to the plain meaning of the language of the insurance policy and the reasonable expectations of the parties to the policy.

The plaintiff also presents a grammatical argument. He claims that the insurance policy defines " '[b]odily [i]njury' " more expansively than that term is generally understood, because, in the plaintiff's view, the term bodily modifies harm, but does not modify the terms sickness or disease. Thus, the plaintiff reads the definition of " '[b]odily [i]njury' " so as to mean not merely bodily harm, bodily sickness, and bodily disease, but also nonbodily sickness and nonbodily disease. We disagree. The definition of " '[b]odily [i]njury' " in the policy does not provide: bodily harm; sickness; or disease. We cannot rewrite the insurance policy by adding semicolons any more than we can by adding words. If the policy had referred to "green vehicles," and defined that term as "green cars, trucks or motorcycles," it is unlikely that there would be a reasonable dispute about whether blue trucks and red motorcycles were intended to be included in the definition. We decline to adopt the plaintiff's idiosyncratic grammatical interpretation of the language in the policy.

The plaintiff finally argues that emotional distress is within the insurance policy definition of bodily injury because modern medical science teaches that emotional distress is accompanied by some physical manifestations. The plaintiff also contends that such an interpretation is consistent with our precedents in the areas of tort and workers' compensation law. Although we do not question the modern medical understanding of the interrelatedness of the mind and body, we disagree that such an understanding determines the mean-

ing of the policy language in question in the present case. We also disagree with the contention that our precedents in the areas of tort and workers' compensation law appropriately inform the meaning of that policy language.

It is undoubtedly true that emotional distress ordinarily might be accompanied by some physical manifestations, such as an altered heart rate and altered blood pressure, and perhaps other such manifestations as changes in the size of the pupils, and sleeplessness and headaches. That does not mean, however, that "bodily harm, sickness or disease," as used in the insurance policy in this case, necessarily includes emotional distress caused by economic loss. The question in this case is the legal meaning of " '[b]odily [i]njury' " as defined in the policy. It is not the medical or scientific question of the degree to which the mind and the body affect each other.

Similarly, although Connecticut has long recognized the tort claim for negligent infliction of emotional distress without requiring an accompanying physical injury; *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 306, 93 A.2d 292 (1952); *Montinieri* v. *Southern New England Telephone Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978); *Clohessy* v. *Bachelor*, 237 Conn. 31, 46, 675 A.2d 852 (1996); and although we also have held that mental disorders unaccompanied by physical trauma to the body are compensable under the Workers' Compensation Act; *Crochiere* v. *Board of Education*, 227 Conn. 333, 363, 630 A.2d 1027 (1993);[7] these authorities do not inform a proper interpretation of the insurance policy here. Briefly put, the policy reasons for recognition of such a tort and for such an interpretation of the Work-

---

[7] We have not yet decided whether our decision in *Crochiere* continues to be good law despite the legislature's subsequent enactment of General Statutes § 31-275 (16) (B) (ii). See *Biasetti* v. *Stamford*, 250 Conn. 65, 77–79, 735 A.2d 321 (1999).

ers' Compensation Act bear no relation to the language of the insurance policy in the present case.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.