# NICHOLAS D. GALGANO *v.* METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY ET AL.
## (SC 17011)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued December 5, 2003—officially released January 27, 2004

*Robert J. Flanagan, Jr.*, for the appellant (plaintiff).

*Jack G. Steigelfest*, for the appellee (defendant Patriot General Insurance Company).

*Opinion*

KATZ, J. The dispositive question in this reservation asks whether, under the underinsured motorist provision of the plaintiff's insurance policy, the plaintiff was entitled to compensation, for bystander emotional distress arising from his having witnessed bodily injury to his son, to the extent of the "each person" bodily injury coverage limit applicable to the plaintiff, when the defendant already had paid to the plaintiff's son the full amount of the "each person" bodily injury limit available to the son and the policy provided that the maximum amount that the defendant was required to

pay "for all claims by all persons for damages for bodily injury to any one person is the 'each person' Uninsured Motorist Coverage limit . . . ." We answer the question in the negative.

The following facts and procedural history are undisputed. On June 18, 1995, Nicholas A. Galgano was a passenger on a 1979 Honda motorcycle operated by his father, the plaintiff, Nicholas D. Galgano, when the motorcycle was struck by an uninsured motor vehicle. The plaintiff's son sustained severe bodily injuries, and the plaintiff sustained bodily injuries and experienced severe emotional distress as a result of his having witnessed the bodily injuries to his son.

The plaintiff was insured by the defendant Patriot General Insurance Company (Patriot General) pursuant to a policy that provided uninsured motorist coverage limits of $20,000 for "each person" and $40,000 for "each accident." The policy further provided a motorcycle endorsement with the following language regarding limits of uninsured motorist insurance: "The maximum amount we'll pay for any one *motorcycle accident* for all claims by all persons for damages for bodily injury to any one person is the 'each person' Uninsured Motorist Coverage limit shown in the declarations. Subject to the limit for 'each person' the maximum amount we'll pay in damages for bodily injury to two or more persons, is the 'each accident' Uninsured Motorist Coverage limits shown in the declarations." (Emphasis in original.) The plaintiff also had an insurance policy with the named defendant, Metropolitan Property and Casualty Insurance Company (Metropolitan), which provided $100,000 in uninsured motorist coverage. The plaintiff's son settled his claims with Metropolitan for the full amount of that policy. Additionally, Patriot General paid $20,000 to the plaintiff's son in compensation for his bodily injuries, thus exhausting the "each person" cov-

erage limit applicable to him under the Patriot General policy.

Thereafter, the plaintiff brought this action against Patriot General and Metropolitan seeking to recover for his physical injuries and for bystander emotional distress stemming from his having witnessed the accident that caused his son's injuries. Both Patriot General and Metropolitan moved for summary judgment as to the plaintiff's bystander emotional distress count claiming that, inter alia: (1) because the plaintiff's bystander emotional distress claim was derivative of his son's claim, it could not be asserted unless the plaintiff's son were a party to the action; and (2) the bystander emotional distress claim was barred because both insurers already had paid their respective "each person" uninsured motorist coverage limits applicable to the bodily injury to the plaintiff's son. In separate proceedings, the trial court, *Hon. Walter M. Pickett, Jr.*, and *Kocay, J.*, respectively, granted both motions, and the plaintiff appealed from the judgment rendered thereon in favor of Patriot General and Metropolitan on his bystander emotional distress claim. The Appellate Court subsequently granted both insurers' motions to dismiss the appeal on the ground that no final judgment had been rendered on the plaintiff's personal injury claim. *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, 64 Conn. App. 25, 30–31, 779 A.2d 229 (2001).

Thereafter, Patriot General and the plaintiff entered into a joint stipulation of facts and filed a motion requesting that the trial court reserve certain questions of law for the advice of the Appellate Court. In accordance with Practice Book § 73-1[1] and General Statutes

---

[1] Practice Book § 73-1 provides in relevant part: "(a) Any reservation shall be taken to the supreme court or to the appellate court from those cases in which an appeal could have been taken directly to the supreme court, or to the appellate court, respectively, had judgment been rendered. Reservations in cases where the proper court for the appeal cannot be determined prior to judgment shall be taken directly to the supreme court.

"(b) All questions presented for advice shall be specific and shall be

§ 52-235 (a),[2] the trial court granted the parties' joint motion for reservation of questions of law. We subsequently transferred the reserved questions to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

The questions framed by the parties and reserved by the trial court for advice are: "(a) Where Patriot General . . . has paid the 'each person' Uninsured Motorist Coverage limit applicable for bodily injury to [the plaintiff's son] and the insurance policy provides that the maximum amount the insurer must pay 'for all claims by all persons for damages for bodily injury to any one person is the "each person" Uninsured Motorist Coverage

phrased so as to require a Yes or No answer.

"(c) Before any question shall be reserved by any court, counsel shall file in that court a stipulation which shall clearly and fully state the question or questions upon which advice is desired; that their present determination by the appellate court having jurisdiction would be in the interest of simplicity, directness and economy in judicial action, the grounds for such allegation being particularly stated; that the answers to the questions will determine, or are reasonably certain to enter into the final determination of the case; and that the parties request that the questions be reserved for the advice of the appellate court having jurisdiction. The stipulation shall also designate the specific pleadings in the trial court case file which are necessary for the presentation of the question or questions sought to be reserved and shall state the undisputed facts which are essential for determination of the question or questions sought to be reserved. With the stipulation the parties shall file a joint docketing statement in the format specified in Section 63-4 (a) (4) for regular appeals. . . .

"(e) The court will not entertain a reservation for its advice upon questions of law arising in any action unless the question or questions presented are such as are, in the opinion of the court, reasonably certain to enter into the decision of the case, and it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action. . . ."

[2] General Statutes § 52-235 provides: "(a) The Superior Court, or any judge of the court, with the consent of all parties of record, may reserve questions of law for the advice of the Supreme Court or Appellate Court in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein.

"(b) The court or judge making the reservation shall, in the judgment, decree or decision made or rendered in such cases, conform to the advice of the Supreme Court or the Appellate Court."

limit,' is [the plaintiff] entitled to compensation for bystander emotional distress arising from witnessing the bodily injury to his son . . . under the separate 'each person' Uninsured Motorist Coverage limit available to [the plaintiff]?"[3] and "(b) If the answer to [the first question] is in the affirmative, can [the plaintiff] have a legally viable claim for bystander emotional distress arising from the bodily injury to [his son] for uninsured motorist coverage against Patriot General . . . subsequent to the prior settlement of the uninsured motorist claim for bodily injury to [the plaintiff's son] and in the absence of [the son] as a party to this action?" Because we answer the first reserved question in the negative, we do not reach the second reserved question.

As part of the stipulated facts, Patriot General has agreed with the plaintiff to a value in an amount of less than $20,000 for the bodily injury that he had sustained. The parties further have agreed that, if the bystander emotional distress claim is recoverable through the "each person" uninsured motorist coverage limit of the plaintiff, the total value of his claim equals the limit of the $20,000 "each person" uninsured motorist coverage limit applicable to his claim for bodily injury.

Patriot General claims that damages for the plaintiff's bystander emotional distress are not recoverable under the $20,000 "each person" uninsured motorist coverage limit applicable to his own bodily injury, but, rather, that the exhaustion of the $20,000 "each person" uninsured motorist coverage limit by payment to the plaintiff's son bars any recovery in compensation for the plaintiff's

---

[3] We note that in *Polowitzer* v. *Uriano*, 263 Conn. 633, 638 and n.4, 821 A.2d 762 (2003), we expressly did not decide whether the language used in a virtually identical policy to the one in the present case would allow the plaintiff therein to recover under the separate "each person" uninsured motorist coverage limit available to him because of the stipulation in that case that " 'bodily injury' . . . includes emotional distress."

bystander emotional distress. In other words, Patriot General contends that the plaintiff's bystander emotional distress is a consequence of the bodily injury to his son and not a bodily injury in itself that would allow coverage under a separate "each person" limit. Additionally, Patriot General claims that because the claim for bystander emotional distress is a derivative claim, the prior settlement with the plaintiff's son and the son's absence from this litigation precludes the plaintiff from recovering for his bystander emotional distress.

The plaintiff argues that all of his injuries, both physical and emotional, from whatever source, should be covered by *his* "each person" limit and not that of his son. Specifically, he claims that, pursuant to *Clohessy* v. *Bachelor*, 237 Conn. 31, 675 A.2d 852 (1996), the emotional injuries suffered by family members who witness the severe injury or death of another family member are a separate and independent direct action entitling the emotionally injured bystander to liability coverage under his or her own coverage and not that of the physically injured family member.

Although we agree with the plaintiff that his bystander emotional distress, arising from his having witnessed the bodily injury to his son, is quite separate and distinct in nature from the injuries sustained by his son, the characterization of the plaintiff's injury is not dispositive of the first issue that we must decide, namely, whether the "each person" coverage limit applicable to the bodily injuries to the plaintiff's son also applies to the plaintiff's claim for bystander emotional distress. How the law defines particular claims does not control. Rather, we must look to the relevant policy language and apply the limits of liability as provided in the policy. In other words, whether we label the plaintiff's emotional injuries as discrete and independent or *derivative;* see *Hansen* v. *Ohio Casualty Ins. Co.*, 239

Conn. 537, 538 n.3, 687 A.2d 1262 (1996) (treating bystander emotional distress as derivative cause of action); see also *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 494, 408 A.2d 260 (1979) (treating loss of consortium as derivative cause of action); is not dispositive. At issue is how the Patriot General policy in effect treats those injuries.

"[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 40, 801 A.2d 752 (2002). "[T]he terms of an insurance policy are to be construed according to the general rules of contract construction. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses. . . . Our jurisprudence makes clear, however, that [a]lthough ambiguities are to be construed against the insurer, when the language is plain, no such construction is to be applied. . . . Indeed, courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Citation omitted; internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 267–68, 819 A.2d 773 (2003).

Therefore, we begin with the pertinent provision of the Patriot General policy, which provides: "The maximum amount we'll pay for any one *motorcycle accident* for all claims by all persons for damages for bodily injury to any one person is the 'each person' Uninsured Motorist Coverage limit shown in the declarations. Subject to the limit for 'each person' the maximum we'll pay in damages for bodily injury to two or more persons, is the 'each accident' Uninsured Motorist Coverage limits shown in the declarations." (Emphasis in original.) By the express terms of the policy, the bodily injury to the plaintiff's son includes *all* claims by all persons for damages for bodily injury resulting from the bodily. injury to the plaintiff's son. It is beyond dispute that, but for the bodily injury to his son, the plaintiff would not have suffered any emotional injuries. In other words, *the plaintiff's injuries are the natural and probable consequence of his having witnessed the accident that injured his son.* Therefore, the measure of the plaintiff's recovery is not governed by the fact that his separate damages arose out of the same accident, but by the fact that they arose out of the same bodily injury to his son.

This treatment of the plaintiff's injuries is consistent with our approach to bystander emotional distress claims in other contexts. In *Clohessy* v. *Bachelor*, supra, 237 Conn. 49, wherein we recognized a claim for bystander emotional distress under certain limited circumstances, we concluded that the plaintiff there was entitled to recover damages for the emotional distress that occurred "as a result of harm done to a third party." Similarly, in *Mendillo* v. *Board of Education*, 246 Conn. 456, 488, 717 A.2d 1177 (1998), we noted that bystander emotional distress, like loss of consortium, is a third party cause of action. Therefore, as with loss of consortium, bystander emotional distress is "a form of third party liability of the defendants. That is, the . . . plain-

tiffs seek to recover from the defendants, not for tortious harms that the defendants inflicted directly on them, but for emotional harms they suffered as a result of the defendants' tortious conduct committed against another with whom they have a close relationship . . . ." Id., 480.

As further support for its claim that, because bystander emotional distress derives from bodily injury to another, it comes within the single "each person" coverage limit pertaining to "all claims by all persons for damages for bodily injury to . . . [that other] person," Patriot General directs our attention to a case in which the Wisconsin Supreme Court addressed an identical issue. In *Mullen* v. *Walczak*, 262 Wis. 2d 708, 718, 664 N.W.2d 76 (2003), the court determined that, although the plaintiff himself had been physically injured in a motor vehicle accident in which his wife was killed, his claim for emotional distress resulted from his wife's injuries. Therefore, under the terms of the plaintiff's insurance policy, any injuries sustained by all persons as a result of the wife's death, including the plaintiff's emotional distress, could be compensated only by the "per person" coverage limit applicable to the plaintiff's wife. Id. In other words, because the plaintiff's emotional injuries arose out of his wife's physical injuries, his claims were compensable only out of *her* "each person" limit. "[B]ut for the death of his wife, [the plaintiff] would not have an emotional distress claim based on witnessing her death. That he suffered his own injuries is irrelevant to the issue of how the policy covers claims that result from bodily injury to another person." (Internal quotation marks omitted.) Id., 715. In so concluding, the court recognized that a plaintiff's bodily injury could include emotional distress as a component, and noted the difficulty in separating damages for emotional distress that stem from different sources. Id. Because of the stipulation in *Mullen* between the

insurance company and the plaintiff, however, which stated that the plaintiff's claim for emotional distress resulted solely from witnessing his wife's death, that case did not present such a problem. Id., 718–19. Therefore, the policy provision that "[t]he limit for each person is the maximum for all damages sustained by all persons as the result of bodily injury to one person in any one accident" controlled and the "each person" limit applicable to the plaintiff's wife included "all damages sustained by all persons as the result of her bodily injury in the accident." (Internal quotation marks omitted.) Id., 716. Wisconsin is not alone in its reasoning. See, e.g., *Allstate Ins. Co.* v. *Clohessy*, 32 F. Sup. 2d 1333, 1336 (M.D. Fla. 1998) (noting that, in context of insurance coverage, majority of jurisdictions that have considered issue have held that bodily injury encompasses only physical harm), question certified for advice, 199 F.3d 1293, 1295 (11th Cir. 2000); *McNeill* v. *Metropolitan Property & Liability Ins. Co.*, 420 Mass. 587, 590, 650 N.E.2d 793 (1995) (concluding that physical ailments arising from emotional distress "do not warrant a separate 'per person' limit . . . because emotional distress is not a bodily injury"); *Farm Bureau Ins. Co. of Nebraska* v. *Martinsen*, 265 Neb. 770, 777, 659 N.W.2d 823 (2003) (concluding that bystander emotional distress "is a byproduct of and entirely dependent upon the bodily injury to [another person]," and is subject to the "per person" coverage limit applicable to that person); *Bowman* v. *Holcomb*, 83 Ohio App. 3d 216, 220, 614 N.E.2d 838 (1992) (concluding that "each person" coverage limit applied because emotional distress is not bodily injury); *United Pacific Ins. Co.* v. *Edgecomb*, 41 Wash. App. 741, 744, 706 P.2d 233 (1985) (concluding that insurance policy "limit[s] the obligation to pay [emotional distress] damages that are derivative or consequential from the injuries to one person to the limits of the policy for injury to that person").

We recognize that there are courts in other jurisdictions that have reached a contrary result. Those courts have done so, however, predicated upon their determination that bystander emotional distress is itself a bodily injury. See, e.g., *Pekin Ins. Co.* v. *Hugh*, 501 N.W.2d 508, 512 (Iowa 1993) (concluding that emotional distress is bodily injury, and therefore compensable to extent of remaining "per occurrence" coverage limits); *Crabtree* v. *State Farm Ins. Co.*, 632 So. 2d 736, 745 (La. 1994) (concluding that insurance policy definition of bodily injury "includes severe and debilitating mental pain and anguish"); *Treichel* v. *State Farm Mutual Automobile Ins. Co.*, 280 Mont. 443, 449, 930 P.2d 661 (1997) (concluding that "each person" coverage limit did not apply to emotional distress when insurance policy did not expressly define bodily injury but allowed recovery for other nonphysical injuries, such as loss of consortium). As Patriot General points out, however, this court previously has concluded, within the context of a liability insurance policy, that "bodily injury . . . *does not* include emotional distress unaccompanied by physical harm." (Emphasis added.) *Moore* v. *Continental Casualty Co.*, 252 Conn. 405, 411–12, 746 A.2d 1252 (2000). Therefore, because emotional distress, by itself, is not a bodily injury, it can be compensable only if it flows from the bodily injury of another person. In other words, in view of the fact that the plaintiff's bystander emotional distress claim arises because of the bodily injury to his son, under the language of the Patriot General insurance policy, which groups all claims by all persons because of bodily injury to another person under the limit applicable to that other person, the claim here for emotional injury must fall under that limit. Thus, as Patriot General points out, although any damages that flowed to the plaintiff from his son's bodily injury may be covered under the policy, in theory, those damages fall under the limit applicable to the plaintiff's son, the person who had sustained the bodily injury.

We conclude, therefore, that the plaintiff's claim for emotional distress comes within the "each person" coverage limit applicable to all claims by all persons for damages for bodily injury to the plaintiff's son. As we previously have stated, that particular "each person" coverage limit has been exhausted. Accordingly, the plaintiff cannot recover uninsured motorist benefits from Patriot General for his bystander emotional distress.

The answer to the first reserved question is: No.

No costs will be taxed in this court to any party.

In this opinion the other justices concurred.