PAMELA TAYLOR ET AL. *v.* WILLIAM T. MUCCI
(SC 18062)

Norcott, Katz, Palmer, Vertefeuille and Schaller, Js.

Argued March 17—officially released August 12, 2008

*Ralph J. Monaco,* with whom were *Thomas J. Londregan* and, on the brief, *Thomas J. Monaco,* for the appellant (named plaintiff).

*Paul M. Cramer,* with whom were *Robert J. Williams, Jr.,* and, on the brief, *Louis J. Dagostine,* for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The named plaintiff, Pamela Taylor,[1] appeals from the judgment of the trial court rendered in favor of the defendant, William T. Mucci. The principal issue in this appeal is whether the trial court properly concluded that the defendant's motor vehicle liability insurance policy (policy) issued by Metropolitan Property and Casualty Insurance Company (Metropolitan), does not provide any coverage for the plaintiff's bystander emotional distress claim. The plaintiff contends that the trial court improperly rejected her claim that the policy provided her with an additional $100,000 in bodily injury coverage for her injuries despite Metropolitan's payment of $100,000 for injuries sustained by the plaintiff's minor son. We disagree with the plaintiff, and, accordingly, we affirm the judgment of the trial court.

The record reveals the following stipulated facts and procedural history. On December 24, 2004, the plain-

---

[1] Pamela Taylor and her husband, Terry Taylor, brought this action as parents and legal guardians of their minor son, Andrew Taylor, to recover damages for personal injuries he sustained when he was struck by an automobile operated by the defendant, William T. Mucci. In addition, Pamela Taylor made her own claim for damages for bystander emotional distress. Thereafter, the parties reached a settlement with regard to the claims on behalf of Andrew Taylor, and those claims were withdrawn. Terry Taylor is not a party to this appeal. For purposes of convenience, we will refer to Pamela Taylor as the plaintiff.

tiff's minor son, Andrew Taylor (Andrew), was struck by a car operated by the defendant and suffered bodily injuries as a result. The plaintiff alleges that she suffered emotional distress as a result of having witnessed the bodily injuries to her son.[2] At the time of the accident, the policy provided bodily injury coverage with liability limits of $100,000 for "each person" and $300,000 for "each accident." The policy defines the liability limit for the per person provision of the policy as "the most [that Metropolitan] will pay for all damages, including . . . emotional distress . . . arising out of bodily injury sustained by any one person as a result of any one accident." The policy's per accident limit is "the most [that Metropolitan] will pay for all damages, including . . . emotional distress . . . arising out of bodily injury sustained by two or more persons resulting from any one accident."

The plaintiff filed a four count complaint against the defendant alleging negligence and recklessness with regard to Andrew's injuries, and negligent and reckless infliction of bystander emotional distress to the plaintiff. Thereafter, the parties entered into a stipulation of facts and settled the claims with respect to Andrew by payment of $100,000, the maximum limit of per person

[2] The parties stipulated that the plaintiff meets the requirements for such a claim as set forth in *Clohessy* v. *Bachelor*, 237 Conn. 31, 56, 675 A.2d 852 (1996). In *Clohessy*, this court concluded that "a bystander may recover damages for emotional distress under the rule of reasonable foreseeability if the bystander satisfies the following conditions: (1) he or she is closely related to the injury victim, such as the parent or the sibling of the victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response." Id. The parties also stipulated that the plaintiff's bystander emotional distress claim is worth $100,000.

coverage under the policy. The parties subsequently submitted the following question for determination by the trial court: "whether the [Metropolitan] policy . . . provides for an additional $100,000 in coverage for [the plaintiff's] bystander emotional distress claim." The trial court rendered judgment for the defendant, concluding that the policy does not provide an additional $100,000 coverage for the plaintiff. This appeal followed.[3]

The plaintiff claims[4] on appeal that the trial court improperly concluded that, as a matter of law, the policy does not provide an additional $100,000 in coverage to satisfy her bystander emotional distress claim. Specifically, the plaintiff asserts that the exhaustion of the $100,000 per person policy limit for Andrew's injuries does not preclude her from recovering on her claim because the emotional distress she suffered constitutes a separate and distinct "bodily injury" under the language of the policy, thus allowing her to recover under a separate per person provision limit in the policy. The defendant responds that the plaintiff cannot recover

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The plaintiff also asserts that the trial court improperly failed to accept proffered testimony concerning the plaintiff's alleged bodily injury and abused its discretion by denying the plaintiff's request to amend her complaint to clarify her bodily injury claim. We decline to review these claims, however, because they are inadequately briefed. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *State* v. *T.R.D.*, 286 Conn. 191, 213–14 n.18, 942 A.2d 1000 (2008). In the present case, the plaintiff has cited just one case in support of both claims, and has provided insufficient analysis with regard to the applicability of this authority. We therefore decline to review these claims.

under a separate per person limit because her claim of bystander emotional distress does not constitute a "bodily injury" under the terms of the policy. Consequently, the defendant asserts, the plaintiff could recover only under the per person limit applicable to Andrew's injuries, which had been exhausted due to the $100,000 payment made for his injuries. We agree with the defendant.

We first set forth the applicable standard of review. "[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, 267 Conn. 512, 519, 838 A.2d 993 (2004). Certain well settled principles of law govern the resolution of this claim. "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract . . . ." (Internal quotation marks omitted.) *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 199, 901 A.2d 666 (2006). In accordance with those principles, "[t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 267, 819 A.2d 773 (2003). Under those circumstances, the policy "is to be given effect according to its terms." (Internal quotation marks omitted.) *Kitmirides* v. *Middlesex Mutual Assurance Co.*, 65 Conn. App. 729, 733, 783 A.2d 1079 (2001), aff'd, 260 Conn. 336, 796 A.2d 1185 (2002). "When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if

possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 6, 942 A.2d 334 (2008).

In the present case, both parties assert that the policy language at issue unambiguously supports their respective interpretations. We agree with the defendant's interpretation. Applying the appropriate standard of review to the allegations of the complaint and the language of the policy, we conclude that the plaintiff's allegation of bystander emotional distress resulting from witnessing her son's injuries does not constitute a bodily injury as that term is defined in the policy. The plaintiff therefore cannot recover under a separate per person coverage limitation. In addition, she cannot recover under the limit of coverage pertaining to Andrew because the $100,000 payment made with regard to his claim exhausted his per person coverage limit under the policy.

We begin with the language of the policy. As we noted previously, the policy limits recovery for bodily injury to $100,000 per person and $300,000 per occurrence. The "limit of liability" provision of the policy provides that recovery under the per occurrence provision requires "bodily injury sustained by two or more persons resulting from any one accident." There is no dispute that Andrew sustained bodily injuries within the meaning of the policy, and he was compensated by payment of the maximum $100,000 per person limit of coverage in the policy. We now must determine whether the plaintiff's claim for bystander emotional distress constitutes a separate and distinct bodily injury under the policy. The policy defines "bodily injury" as "any bodily injury, sickness, disease or death sustained by any person."

Several recent decisions of this court have established that emotional distress, without accompanying

physical harm, does not constitute a "bodily injury." In *Moore* v. *Continental Casualty Co.*, 252 Conn. 405, 746 A.2d 1252 (2000), we considered the issue of whether allegations of emotional distress arising out of economic loss sufficed to trigger a duty to defend under a homeowner's insurance policy. The relevant policy provided coverage for "bodily injury," which was defined as "bodily harm, sickness or disease . . . ." Id., 407. We concluded that emotional distress did not constitute "bodily injury" within the meaning of the policy, and that such allegations did not trigger the insurer's duty to defend. We reasoned, citing Webster's Third New International Dictionary, that the word "bodily," as typically used in the English language, "strongly suggests something physical and corporeal," as opposed to emotional or psychological. *Moore* v. *Continental Casualty Co.*, supra, 410–11 and 411 n.6. Moreover, we concluded that in the policy, "the word bodily is used as an adjective to modify the terms injury, harm, sickness and disease." Id., 411. Thus, purely emotional harm did not meet the policy definition of bodily injury because bodily harm, bodily sickness or bodily disease was required under the terms of the policy.

Additionally, we emphasized that a significant number of jurisdictions to have considered the issue has followed the "majority rule [which] is that, as a matter of law, the term bodily injury in a liability policy does not include emotional distress unaccompanied by physical harm." Id., 411–12; see, e.g., *First Investors Corp.* v. *Liberty Mutual Ins. Co.*, 152 F.3d 162, 166–67 (2d Cir. 1998) (no duty to defend against claim for emotional distress arising out of economic losses caused by securities fraud); *Keating* v. *National Union Fire Ins. Co.*, 995 F.2d 154, 156 (9th Cir. 1993) (same); *American & Foreign Ins. Co.* v. *Church Schools in the Diocese of Virginia*, 645 F. Sup. 628, 632–33 (E.D. Va. 1986) (no duty to defend against claim for emotional distress aris-

ing out of teacher's alleged improper sexual conduct); *E-Z Loader Boat Trailers, Inc.* v. *Travelers Indemnity Co.*, 106 Wash. 2d 901, 907–908, 726 P.2d 439 (1986) (no duty to defend against claim for emotional distress arising out of illegal discharge from employment); see also *Allstate Ins. Co.* v. *Quito*, United States District Court, Docket No. 3:06CV1671, 2007 U.S. Dist. LEXIS 56127, *11–12 (D. Conn. August 2, 2007) (applying *Moore*'s majority rule and concluding that emotional injuries arising from defendant's false or malicious statements not "bodily harm," which was defined in insurance policy as "physical harm to the body, including sickness or disease, and resulting death"); B. Ostrager & T. Newman, Insurance Coverage Disputes (13th Ed. 2006) § 7.03[a], pp. 397–412. Notably, in *Moore* v. *Continental Casualty Co.*, supra, 252 Conn. 414, we rejected the plaintiff's claim that emotional distress fell within the policy's definition of "bodily harm" because it was accompanied by physical manifestations. We conceded that, although emotional distress "might be accompanied by some physical manifestations," it did not follow that emotional distress constituted a type of bodily injury under the policy. Id., 414–15. We emphasized that it was the "legal meaning of '[b]odily [i]njury' as defined in the policy" that was at issue in the case rather than "the medical or scientific question of the degree to which the mind and the body affect each other." Id., 415.

More recently, in *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 267 Conn. 523, we concluded that "emotional distress, by itself, is not a bodily injury" in the context of a liability insurance policy that did not define the term bodily injury. The plaintiff had been operating a motorcycle on which his son was a passenger when the motorcycle was involved in a collision with an uninsured motor vehicle. Id., 514. Both the plaintiff and his son had sustained bodily injuries as a

result of the accident, and the plaintiff experienced severe emotional distress from witnessing his son's injuries. Id. The plaintiff sought recovery for bystander emotional distress under the "each person" bodily injury coverage limit of the underinsured motorist provision after the defendant already had paid to the plaintiff's son the full amount of the "each person" bodily injury limit available to him. Id., 513. The relevant insurance policy provided a motorcycle endorsement with the following language with regard to the limit of the uninsured motorist insurance: " 'The maximum amount [the insurer will] pay for any one *motorcycle accident* for all claims by all persons for damages for bodily injury to any one person is the "each person" [u]ninsured [m]otorist [c]overage limit shown in the declarations. Subject to the limit for "each person" the maximum amount [the insurer will] pay in damages for bodily injury to two or more persons, is the "each accident" [u]ninsured [m]otorist [c]overage limits shown in the declarations.' " (Emphasis in original.) Id., 514. We concluded that the plaintiff could not recover uninsured motorist benefits for his bystander emotional distress claim because that claim "[arose from] the bodily injury to his son" and the language of the policy grouped "all claims by all persons because of bodily injury to another person under the limit applicable to that other person." Id., 523. Consequently, the court reasoned that payment for emotional injury was required to "fall under [the 'each person'] limit." Id. Central to the court's reasoning in *Galgano* was the fact that, under the terms of the policy, emotional distress was compensable only if it "flow[ed] from the bodily injury of another person" because emotional distress is not itself a bodily injury. Id.

Returning to the present case, the striking similarity between the definition of bodily injury employed in the policy and the definition at issue in *Moore* leads us to

conclude that the plaintiff's claim for bystander emotional distress does not constitute a bodily injury within the meaning of the policy. In the present case, there was no "physical or corporeal" injury. Consistent with *Moore*, we read the word "bodily" as modifying both "sickness" and "disease," thus precluding purely emotional harm from coverage under the policy. Finally, we find it persuasive that, as in *Moore*, the "overwhelming majority of jurisdictions" has found that the term "bodily injury" in a liability policy does not include emotional distress unaccompanied by physical harm. *Moore* v. *Continental Casualty Co.*, supra, 252 Conn. 411–12. Taken together, our opinions in *Moore* and *Galgano* establish that emotional distress, without accompanying physical harm, does not constitute "bodily injury" as defined in the policy at issue in the present case. Consequently, only one bodily injury within the meaning of the policy occurred here, namely, the injuries suffered by the plaintiff's son. The plaintiff thus may not recover under the per accident provision of the policy, which requires bodily injury to "two or more persons . . . ."

We are not persuaded by the plaintiff's assertions that *Moore* is distinguishable from the present case because *Moore* involved emotional distress that arose out of *financial loss*. Although it is true that in *Moore*, we relied on cases from other jurisdictions that dealt with emotional distress apart from the bystander context; see *Moore* v. *Continental Casualty Co.*, supra, 252 Conn. 412–13; the court relied principally on the language of the insurance policy at issue in that case. As we have stated previously, the definition of bodily harm in *Moore* closely mirrors the definition of that term in the policy in the present case, and the court's reasoning in *Moore* is illuminating, if not directly controlling, of the matter in dispute in the present case.

The plaintiff also attempts to distinguish *Galgano* by asserting, inter alia, that the parties in that case had stipulated that " 'bodily injury' under the [insurance] policy does not include emotional distress." This assertion is simply incorrect. In *Galgano*, this court observed that it was *the defendant insurer* who had "point[ed] out [that] this court previously has concluded, within the context of a liability insurance policy, that 'bodily injury' . . . *does not* include emotional distress unaccompanied by physical harm." (Emphasis in original.) *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 267 Conn. 523.

We also are not persuaded by the plaintiff's assertion that the trial court improperly limited this court's decision in *Polowitzer* v. *Uriano*, 263 Conn. 633, 821 A.2d 762 (2003), to its facts. In *Polowitzer*, the plaintiff and his wife were involved in a motor vehicle collision with an underinsured defendant motorist. Id., 635. The plaintiff's wife died as a result of the accident, and the plaintiff sustained bodily injuries and also suffered bystander emotional distress as a result of witnessing his wife's fatal injuries. Id., 636. The plaintiff sought recovery for bystander emotional distress arising from the accident under the "each person" provision of the relevant insurance policy where the policy provided uninsured motorist coverage limits of $100,000 for "each person" and $300,000 for "each accident," and the "each person" limit had been exhausted through payment on behalf of the plaintiff's wife. Id., 636–37. The relevant policy provision covered "bodily injury, including loss of services, sickness, disease or death which results from the injury, caused by a *motor vehicle accident* and suffered by *you*." (Emphasis in original.) Id., 638. Additionally, the policy contained the following endorsement regarding the policy limits: " ' "The maximum amount [the insurer will] pay [in damages] for any one motorcycle accident for all claims by all persons for damages for

bodily injury to any one person is the 'each person' [u]nderinsured [m]otorist [c]overage limit shown in the declarations. Subject to the limit for 'each person' the maximum amount [the insurer will] pay in damages for bodily injury to two or more persons is the 'each accident' [u]nderinsured [m]otorist [c]overage limit shown in the declarations." ' " Id., 636. Significantly, the policy did not define the term bodily injury, but the parties had stipulated that the term includes emotional distress. Id., 638. The court concluded that, because the parties had stipulated that emotional distress was a "bodily injury" within the meaning of the insurance policy, the plaintiff was able to recover under the separate "each person" underinsured motorist coverage available to him. Id. The court in *Polowitzer* specifically noted that it was not deciding whether the language used in the policy would support the same conclusion in the absence of the stipulation as to the meaning of the term bodily injury. Id., 638 n.4 In the present case, by contrast, the parties have not stipulated that the plaintiff's emotional distress constitutes bodily injury. Accordingly, we conclude that the trial court's treatment of *Polowitzer* was not improper.

The plaintiff further claims that the trial court improperly denied her recovery because she "[did] not derive her emotional injury from [Andrew's] injury, [but] rather she derive[d] it from experiencing firsthand the wrongful conduct of the defendant." The issue of whether her emotional distress claim was derivative of, or separate and distinct from, Andrew's claim is not dispositive of the question with which we are faced. As we have stated previously, "[h]ow the law defines particular claims does not control. Rather, we must look to the relevant policy language and apply the limits of liability as provided in the policy." *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 267 Conn. 518; id., 518–19 (observing that question of whether

emotional injuries suffered in connection with claim for bystander emotional distress are "label[ed] . . . as discrete and independent or *derivative* . . . is not dispositive" because central issue is how insurance policy treats injuries at issue [citations omitted; emphasis in original]); see *Polowitzer* v. *Uriano*, supra, 263 Conn. 638 (declining to reach issue of whether plaintiff's bystander emotional distress claim is derivative after deciding that plaintiff was entitled to recover under specific terms of insurance policy). Similarly, in the present case, it is the language of the policy that controls the outcome of this coverage dispute.

We conclude, therefore, that the trial court properly determined that the plaintiff did not suffer a "bodily injury" within the meaning of the policy. Because Andrew already recovered the maximum amount due under the policy, the plaintiff is precluded from any further recovery for her claim for bystander emotional distress.

The judgment is affirmed.

In this opinion the other justices concurred.